IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-248-D

| | |
|---|---|
| CRAIG SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KEN MARTIN and ) | |
| LA QUINTA INN AND ) | |
| SUITES/LQ MANAGEMENT, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Craig Smith ("plaintiff" or "Smith") is an African-American who contends that defendant LaQuinta Inn and Suites LQ Management ("defendant" or "LQ Management") terminated his employment as a maintenance technician due to his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Smith (who is proceeding pro se) also contends that LQ Management violated the Fair Labor Standards Act ("FLSA") by failing to pay him for certain overtime hours. LQ Management denies Smith's allegations, contends that it lawfully terminated his employment for insubordination, and contends that it properly paid him all wages. LQ Management filed a motion for summary judgment [D.E. 25], which Smith opposes. Smith also seeks summary judgment [D.E. 28, 33], which LQ Management opposes. As explained below, LQ Management's motion for summary judgment is granted, and Smith's motion for summary judgment is denied.

I.

LQ Management operates LaQuinta Inns & Suites at locations throughout the United States, including a hotel near Crabtree Valley in Raleigh, North Carolina. Martin Decl. ¶ 2 (3/4/11). In

February 2009, Smith applied for employment at the Crabtree location ("Crabtree hotel"), and General Manager Ken Martin ("Martin") hired Smith as a maintenance technician. Id. ¶ 3. Smith reported directly to Martin, who was the senior manager at the Crabtree hotel. Id. ¶ 4. When Martin was absent, Assistant General Manager Joey Watkins and Front Office Manager Todd Carvell served as managers in charge. Id. ¶ 6.

During Smith's eleven months of employment, Martin, Watkins, and Carvell disciplined Smith numerous times. For example, on May 31, 2009, Watkins prepared a written disciplinary warning for Smith due to Smith's failure to tell the front desk that certain rooms had been placed out of order. See Martin Decl. ¶ 14 (3/4/11), Decl. Ex. A. Smith received verbal warnings throughout his employment for such things as failing to collect trash and taking too much time to run work-related errands. See Martin Decl. ¶¶ 15–17. Smith also often exceeded his spending limit when buying supplies at Lowe's and was counseled about overspending and poor performance. Id. ¶ 15–17, Decl. Ex. B.

In December 2009, the Crabtree hotel instituted a spending freeze, and Smith was aware of it. See Smith Dep. 92–93. On December 23, 2009, Smith was attempting to repair a broken door lock at the Crabtree hotel. Id. In order to fix the lock, Smith told Carvell (the manager on duty) that he needed a piece of wood and two self-tapping screws. Id. Carvell authorized the purchases. Id.; Carvell Decl. ¶¶ 4–5. When buying the items at Lowe's, Smith decided to exceed the authorized amount by purchasing a saw blade and wrench. Smith Dep. at 95–96, 101–102; Carvell Decl. ¶¶ 4–5. When Smith returned to work, he did not provide the receipt to Carvell, despite instructions to do so. Id. at 97; Carvell Decl. ¶ 5. Nonetheless, on December 26, 2009, Carvell discovered Smith's unauthorized purchases. See Carvell Decl. ¶ 6.

On December 26, 2009, Carvell spoke with Martin (who was out of town on vacation). Martin Decl. ¶ 7. Carvell told Martin about Smith's unauthorized purchases on December 23, 2009. Id.; Carvell Decl. ¶ 7. Martin, in turn, decided to issue a disciplinary warning to Smith and asked Carvell to deliver it. See Carvell Decl. ¶¶ 7–8; Martin Decl. ¶ 7. Carvell then delivered the written warning to Smith, spoke with Smith about it, and told Smith to go to work. See Smith Dep. 124–25; Carvell Decl. ¶ 8. Rather than going to work, Smith became angry and refused to work. Id. at 125; Carvell Decl. ¶¶ 9–11.

Carvell again spoke with Martin, and Martin instructed Carvell to tell Smith to go to work and that if he refused to work, then terminate Smith's employment for refusal to work. See Martin Decl. ¶ 8 (3/4/11), Carvell Decl. ¶¶ 9–12. Carvell went to Smith (who was sitting in his truck) and told Smith that if he continued to refuse to work, then he was engaging in insubordination warranting termination. Smith Dep. 128, 142, 154, Dep. Ex. 5; Carvell Decl. ¶¶ 10–12. While Carvell was speaking with Smith, Carvell was holding the employee handbook, which states that insubordination is grounds for immediate termination. See Carvell Decl. ¶¶ 11–12; cf. Martin Decl. ¶ 27, Decl. Ex. E, p. 5. Notwithstanding Carvell's warning, Smith sat in his truck for another 30 minutes and failed to begin working. See Carvell Decl. ¶¶ 11–12. In accordance with Martin's direction, Carvell then terminated Smith's employment. See id.

After his termination, Smith complained to Martin's superiors. On January 4, 2010, Martin (who had returned from vacation) met with Smith to discuss the termination. See Smith Dep. 147. During the meeting, Martin told Smith that he had approved Smith's termination due to insubordination. Id. Smith did not allege race discrimination during this meeting. Id. at 157–58; Martin Decl. ¶ 12.

3

On January 5, 2010, Smith spoke with Regional Field Human Resources Manager Stacy Babl to complain about his termination. See Smith Dep. 161–62. Babl investigated the termination and concluded that it was justified. Id. at 162–64. Smith never alleged race discrimination to Babl. See id. at 167. Similarly, on January 6, 2010, Smith contacted Vice President of Employee Relations and Recruiting Mikki Hughes to complain about his termination. Smith Dep. 83, 167–68. Again, Smith did not allege race discrimination to Hughes. Id. at 167–70.

On January 31, 2010, LQ Management hired Denis Brickly, who is white, to replace Smith. See Martin Decl. ¶ 18. LQ Management terminated Brickly's employment three months later due to Brickly's violation of company policy. Id.

LQ Management seeks summary judgment [D.E. 25] and filed a supporting memorandum [D.E. 26]. Smith opposes the motion and filed his own motion for summary judgment [D.E. 28, 33]. LQ Management filed a response in opposition to Smith's motion for summary judgment [D.E. 32] and filed a motion to strike certain portions of Smith's summary judgment brief and certain exhibits [D.E. 30].

II.

Before turning to LQ Management's motion for summary judgment, the court addresses its motion to strike [D.E. 30]. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, LQ Management filed a motion to strike certain portions of the Smith's summary judgment brief and supporting exhibits because Smith failed to identify witnesses or produce documents during the discovery period. See Def.'s Mem. Supp. Mot. Strike 2–6. Notwithstanding Smith's failure to identify witnesses or produce documents during discovery, Smith submitted witness statements and documents in support of his motion for summary judgment and in opposition to LQ Management's motion for summary judgment. See Pl.'s Mem. Supp. Mot. Summ. J. The evidence includes a

4

statement of Dennis Brickly (Exhibit F to plaintiff's summary judgment motion), a statement of Tabbitha McAdoo (Exhibit H to plaintiff's summary judgment motion), and Smith's handwritten notes concerning his hours (Exhibit G to plaintiff's summary judgment motion). Id. Essentially, LQ Management contends that Smith's failure to provide this information in his initial disclosures or in his discovery responses warrants striking this information. See Def's Mem. Supp. Mot. Strike 2–6.

Under Rule 37, a court has the power to enter an order striking a pleading or parts thereof as a sanction against a party where a party fails to (1) obey a court order related to discovery or (2) serve answers or objections to initial disclosures, interrogatories, or requests for production. See Fed. R. Civ. P. 37(b)(2), 37(d). After reviewing the record, the court finds that Smith did not comply with his discovery obligations, including his obligation to provide initial disclosures under Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure and this court's scheduling order of October 27, 2010 [D.E. 18]. Accordingly, defendant's motion to strike is granted. See, e.g., Smith v. Botsford Gen. Hosp., 419 F.3d 513, 516–17 (6th Cir. 2005); Hartford Cas. Ins. Co. v. MCJ Clothiers, Inc., 54 Fed. Appx. 384, 388–89 (4th Cir. 2002) (per curiam) (unpublished); Lloyd v. New Hanover Regional Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *3 (E.D.N.C. Mar. 31, 2009), aff'd, 405 Fed. Appx. 703, 704 (4th Cir. 2010) (per curiam) (unpublished), cert. denied, 131 S. Ct. 2109 (2011); Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 631–32 (E.D.N.C. 2008); Johnson v. UPS, Inc., 236 F.R.D. 376, 377–79 (E.D. Tenn. 2006).

Alternatively, the unsworn statements of Brickly, McAdoo, and Smith (including his handwritten notes concerning his hours) fail to comply with Rule 56(c)(4) of the Federal Rules of Civil Procedure. In addition, the statements contain inadmissible hearsay. Thus, LQ Management's motion to strike is granted.

5

III.

In considering the motions for summary judgment, the court applies the familiar summary judgment standard and views the evidence in the light most favorable to the non-movant. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 376 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A.

First, the court addresses plaintiff's claim that LQ Management terminated his employment due to his race in violation of Title VII. Smith lacks direct evidence that LQ Management terminated him in violation of Title VII; therefore, he proceeds under the burden-shifting framework first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff first must establish a prima facie case. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–55 (1981). If a plaintiff establishes a prima facie case, then the burden of production shifts to defendant to produce evidence that defendant took the adverse employment action for a legitimate, nondiscriminatory reason. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506–07; Burdine, 450 U.S. at 253–54. If the defendant meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that defendant's stated reason for taking the adverse employment action was a pretext (i.e., a sham) for race discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr., 509 U.S. at 507–08; Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); Warch v. Ohio Cas. Ins. Co. 435 F.3d 510, 513–14 (4th Cir. 2006).

In order to establish a prima facie case of wrongful termination under Title VII, Smith must establish that: (1) he is a member of a protected class; (2) he was terminated; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time he was terminated; and (4) that the position was filled by a similarly qualified applicant outside the protected class. See, e.g., King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); cf. Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir. 2005).

If Smith establishes a prima facie case, defendant must produce evidence that it took adverse employment action for a legitimate nondiscriminatory reason. Insubordination is such a reason. See, e.g., Flores v. Preferred Tech. Grp., 182 F.3d 512, 515 (7th Cir. 1999). The burden then shifts back to Smith to raise a genuine issue of material fact concerning pretext. Smith may prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). In this case, Smith must demonstrate that there is a genuine issue of material fact concerning whether Martin honestly believed that Smith was insubordinate in refusing to work. See, e.g., Holland, 487 F.3d at 217–18; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Shepherd v. Coastal Cmty. Action, Inc., 602 F. Supp. 2d 686, 689 (E.D.N.C. 2009); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 608 (E.D.N.C. 2006).

LQ Management argues that Smith has failed to establish a prima facie case. See Def.'s Mem. Supp. Mot. Summ. J. 11–12. In support, LQ management contends that when it terminated Smith's employment, he was not performing his job at a level that met his employer's legitimate expectations. Id. at 12.

LQ Management's argument has force. The record shows that Smith's insubordination on December 26, 2009, bespeaks a failure to perform his job duties at a level that met his employer's legitimate expectations. Indeed, Martin's honest belief concerning Smith's refusal to perform his job duties led Martin to decide to terminate Smith's employment. Accordingly, Smith has failed to establish a prima facie case. See King, 328 F.3d at 149–150.

In opposition to the conclusion that LQ Management decided to terminate Smith's employment due to Martin's honest belief about Smith's insubordination, Smith cites various evidence. Whether the court analyzes this evidence as part of the prima facie case or as part of the pretext analysis, Smith has failed to raise a genuine issue of material fact. First, Smith intimates that LQ Management employees are being untruthful about the "real" reason for his termination, but concedes that he has no proof. See Pl.'s Mem. Supp. Mot. Summ. J. 4. Smith's "speculation and conjecture are not sufficient to defeat summary judgment." Pittman v. Hunt Construction Grp., 564 F. Supp. 2d 531, 536 (E.D.N.C. 2008) (citing Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817–18 (4th Cir. 1995); Choe v. Smith, No. 94-2143, 1995 WL 541675, at *2 (4th Cir. Sept. 13, 1995) (per curiam) (unpublished)). No rational jury could credit Smith's intuition in the face of the overwhelming evidence concerning his insubordination and Martin's honest belief about Smith's refusal to work.

Second, Smith cites his own subjective view of his performance and conduct. See Pl.'s Mem. Supp. Mot. Summ. J. 1–2. Smith's subjective view of his performance and conduct, however, is not sufficient to create a genuine issue of material fact as to pretext. See, e.g., Holland, 487 F.3d at 217–18; King, 328 F.3d at 151–52; Williams v. Cerberonics, Inc., 871 F.2d 452, 459 (4th Cir. 1989); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Moreover, the record demonstrates that Smith had performance problems during his entire tenure. Likewise, to the

8

extent Smith relies on the subjective opinion of his coworkers concerning their opinion of his performance, such evidence does not create a genuine issue of material fact as to pretext. See, e.g., King, 328 F.3d at 149.

Third, Smith notes that he occasionally received Walmart gift cards for his performance and that Martin asked Carvell not to micromanage other departments. See Pl.'s Mem. Supp. Mot. Summ. J. 1. However, LQ Management awarded gift cards to all employees based on the overall performance of the Crabtree hotel. See Martin Decl. ¶ 2 (3/31/11). As such, the cards do not reflect an award for Smith's individual performance. Id. Moreover, even if defendant occasionally praised Smith's performance, such sporadic praise does not create a genuine issue of material fact concerning whether Smith was meeting his employer's legitimate expectations when he was terminated. See, e.g., Brinkley v. Harbour Recreation Club, 180 F.3d 598, 609–10 (4th Cir. 1999); overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). As for Martin's alleged comment to Carvell concerning "micromanagement," the comment is irrelevant. Carvell was authorized to discipline Smith. See Martin Decl. ¶ 6 (3/4/11).

Finally, this court does not sit to decide whether Martin's honest belief concerning Smith's performance and conduct warranted discharge or some lesser sanction. See, e.g., Holland, 487 F.3d at 217–18; Hux, 451 F.3d at 315; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, at the final stage of McDonnell Douglas, the fundamental issue is whether Smith has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny. Because Smith failed to raise a genuine issue of material fact concerning such pretext, LQ Management is entitled to summary judgment on plaintiff's Title VII claim.

In sum, Smith has presented no evidence from which a rational factfinder could find that he was performing his job at a level that met his employer's legitimate expectations on December 26, 2009, or that LQ Management's decision to terminate his employment on that date was a pretext designed to mask race discrimination. Accordingly, the court grants LQ Management's motion for summary judgment on Smith's Title VII claim, and denies Smith's motion for summary judgment.

B.

As for Smith's FLSA overtime claim under 29 U.S.C. § 207(a)(1), Smith must show (1) that he performed work for which her was not properly compensated; (2) the amount and extent of that work; and, (3) that the employer knew of the uncompensated overtime. See, e.g., Talton v. I.H. Caffey Distrib. Co., 124 F. Appx. 760, 763 (4th Cir. 2005); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986). If Smith establishes this prima facie case, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from employee's evidence." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946); Pforr v. Food Lion, Inc., 851 F.2d 106, 108–09 (4th Cir. 1988).

Smith's evidence fails to show that he performed work for which he was not properly compensated. Although Smith contended in his deposition that he worked uncompensated overtime almost every week during his employment, he presented no competent evidence to support this claim. Cf. Smith Dep. 183–90. Moreover, Smith's belatedly produced handwritten "time records" are not competent evidence. Likewise, the unsworn statements of Smith, Brickly, and McAdoo are not competent evidence. See, e.g., Barksdale v. E&M Transp., Inc., No. 3:10cv140, 2010 WL 4451790, at *2–3 (E.D. Va. Nov 1, 2010). Rather, the competent evidence in the record consists of

the sworn testimony of Martin and the accompanying hotel time records (which Smith contemporaneously signed). See Martin Decl. ¶¶ 19–25, Decl. Ex. C. Because Smith has failed to meet his prima facie case, LQ Management is entitled to summary judgment on Smith's FLSA claim. See, e.g., Martin v. Champion Windows Co. of Columbia, LLC, No. 3:09-757-JFA, 2010 WL 412583, at *1–4 (D.S.C. Jan. 28, 2010). Alternatively, even if Smith established a prima facie case, the record demonstrates that LQ Management is entitled to summary judgment on Smith's FLSA claim. Thus, the court grants LQ Management's motion for summary judgment, and denies Smith's motion for summary judgment.

## IV.

In sum defendant's motion to strike [D.E. 30] is GRANTED, defendant's motion for summary judgment [D.E. 25] is GRANTED, plaintiff's motion for summary judgment [D.E. 28, 33] is DENIED, and defendant's motion to dismiss [D.E. 20] is DENIED as moot. The clerk is DIRECTED to close this case.

SO ORDERED. This 23 day of August 2011.

JAMES C. DEVER III
United States District Judge

11
Case 5:10-cv-00248-D Document 36 Filed 08/23/11 Page 11 of 11